JUSTICE LaVECCHIA
delivered the opinion for the Court.
This appeal arises from a citizen request, pursuant to the Open Public Records Act (OPRA or the Act), N.J.S.A. 47:1A-1 to -13, and the common law right of access, for essentially a day’s worth of video footage from a stationary security camera attached to the second-story rear area of Bloomfield Town Hall, adjacent to the police station.
The Township of Bloomfield (Township) declined to release the videotape footage. According to the Township, allowing unrestricted access to security camera videotape—which would reveal not only what is and is not captured by the security camera, but also when and how well it is captured—would undermine the purpose of having a security camera system protecting the buildings and people within them. The Township asserted that the security exclusions of OPRA permitted withholding the videotape.
We granted leave to appeal from the Appellate Division’s affir-mance of a trial court order compelling release of the video under OPRA. We conclude that OPRA does not require release of video footage that reveals security capacity for security surveillance systems protecting public buildings. Although we find no OPRA right of access to video footage from such surveillance systems, that does not mean that a citizen may not obtain, when appropriate, some portion of video from a public facility’s security surveillance system, but that request must be subjected to the common law balancing of interests under a right-to-know claim. That common law claim was not reached in this matter so we leave that analysis for another day in the circumstances arising in this appeal.
*164 The security exceptions preserve the confidentiality of
emergency or security information or procedures for any buildings or facility which, if disclosed, would jeopardize security of the budding or facility or persons therein; [and]
security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software[.]
[N.J.S. A 47:1A-1.1.]
The wholesale release of videotape footage from a surveillance camera, which is part of a government facility’s security system protecting its property, workers, and visitors, would reveal information about the system’s operation and also its vulnerabilities, jeopardizing public safety. The compelled release under OPRA, on demand for any or no reason, of a security system’s operational product revealing otherwise nonpublic information about monitoring capability is at odds with the legislative intent in creating security exceptions to OPRA. The security exceptions will be applied in a commonsense manner that fulfills the very purpose of having security-based exceptions, and we will do so mindful of present day practical challenges to maintenance of security in public facilities.
We hold that the security exclusions preclude disclosure under OPRA of the videotape requested in this matter.
I.
On April 7, 2014, plaintiff Patricia Gilleran emailed the Township’s Records Custodian requesting five days’ worth of footage— March 31, 2014 to April 4, 2014, from 7:00 a.m. to 9:00 p.m.—from a stationary security camera, which was attached to the back of the municipal building and which, she claimed, appeared to be directed toward the rear of Town Hall and a parking area that encompassed the Mayor’s parking space.
A clerk[1] for the Township spoke with Gilleran, indicated that five days of footage would be voluminous, and asked if the request *165 could be winnowed. Gilleran accordingly reduced her request to one day of recordings: March 31, 2014, from 7:00 a.m. to 9:00 p.m. On April 11, 2014, Gilleran was informed by email that her request was denied pursuant to OPRA’s exemption for security information.
Gilleran commenced this action against the Township and its Records Custodian by filing a complaint in the Law Division seeking the requested footage under OPRA and the common law right of access. According to her complaint, plaintiff seeks the video footage to determine whether certain people had entered the municipal building. The complaint further alleges that the camera is in plain sight and captures video of a public area. Four photographs of the surveillance camera were appended to the complaint to depict that the camera is affixed to the second story of the municipal building’s wall, above a parking lot that includes the Mayor’s parking space.
The complaint contends that the videotape is a government record subject to access under OPRA and requests the court either to direct the Township to release the requested footage or to review the tapes in camera and order defendants to redact portions of the tape that are exempt and release the remainder. The complaint also demands the award of a civil penalty and attorney’s fees under OPRA. The complaint also seeks release of the videotape under the common law right of access.
In its answer, the Township contends that the footage is exempt as security information. The Township submitted two certifications: one from the clerk who responded to Gilleran’s request and the other from Ted Ehrenburg, Bloomfield’s Township Administrator. Ehrenburg certified that:
3. [ ] The camera from which the video was requested is located on the rear of Town Hall on the second story. Without revealing security information, the camera provides security for Town Hall and/or the Law Enforcement Building adjacent to Town Hall.
4. The cameras are strategically placed and smoked glass is placed over the cameras so that the public does not know the area that is being surveilled.
*166 5. Allowing access by the public to the video surveillance would defeat the entire purpose of having security cameras on Town Hall.
6. Again, without revealing security information, the area which is potentially surveilled is not only used by public employees but Police Officers who report to and from work, confidential informants who are brought into the Police Station, witnesses who are brought into the Police Station, domestic violence victims who are brought into the Police Station and members of the public who seek to report crimes.
7. If the public is given access to the video tapes, the safety of these individuals could be put in jeopardy.
8. Therefore, video surveillance which is essential to the security of the township buildings should not be provided to the public.
On the return date of the court’s order to show cause, plaintiff argued that, because the ease presents a novel OPRA issue, the court’s focus should be on the Act’s animating principle, which is to grant unfettered public access to government records. Plaintiff urged the court to find that none of OPRA’s security exemptions creates a blanket exemption for surveillance video footage based on a concern for security and that, therefore, the Township was obliged to examine the video to determine whether some portion of its contents would pose a security risk. Plaintiffs argument emphasized that the camera was placed in an obvious and public place and that one can stand outside the building and observe the same people entering and leaving the building that the tape would have recorded.
The Township argued that its employees should not be required to review security footage for the Township to resist a claim for surveillance videotape based on a security exemption. From a practical perspective, the Township maintained that requiring Township employees to review security footage for every public request could impose substantial burdens on the Township’s resources. The Township acknowledged that no Township official had viewed the entire footage before claiming a security exemption under OPRA for plaintiffs request; nevertheless, the Township argued that the footage could pose security risks because it might reveal undercover officers, witnesses, or victims seeking to maintain confidentiality. More fundamentally, the Township contended that the videos should remain confidential so the Township *167 can maintain the secrecy of the scope of the security surveillance system.
The Law Division held that the Township was in violation of OPRA and ordered release of the requested video footage within five days. The court also directed the parties to attempt agreement on reasonable attorney’s fees under N.J.S.A. 47:lA-6.
On July 1, 2014, the Township filed motions for leave to appeal and for a stay pending appeal, maintaining that “there is a security risk if [the tape is] produced,” and that the “revealing of security measures and surveillance techniques would create a risk of [sic] the safety of persons in the Township.” The Appellate Division granted the stay on July 2, 2014. The Appellate Division also granted the application of the American Civil Liberties Union of New Jersey (ACLU-NJ) for amicus curiae status.
On May 13, 2015, the Appellate Division affirmed the order of the trial court. Gilleran v. Twp. of Bloomfield, 440 N.J.Super. 490, 501, 114 A.3d 780 (App. Div. 2015). The panel rejected the Township’s argument that the fact that the video camera footage was part of a security system should have been sufficient justification to deny access. Id. at 497, 114 A.3d 780. Based on a statutory construction analysis, the panel held that OPRA’s statutory exclusions addressing security do not provide a blanket exemption for all security information. Ibid.
Further, the appellate panel held that the record lacked sufficient specific information for it to conclude that activities and individuals’ identities revealed on the tape would pose a security risk if the tape were released. Id. at 498, 114 A. 3d 780. That said, the panel declined to conclude that an agency must review requested video recordings in order to claim an exemption based on security reasons, acknowledging that such a requirement could be unreasonably burdensome. Ibid. Rather, the panel stated that determining whether the government must review a recording should be addressed on a case-by-case basis, taking into consideration the length of the requested recordings and the nature of the information contained therein. Id. at 500, 114 A.3d 780. The *168 Appellate Division remanded the matter for additional proceedings related only to the award of fees. Id. at 501, 114 A3d 780.
Because final judgment had not yet been rendered, the Township properly sought leave to appeal to this Court, which we granted. 223 N.J. 402, 125 A 3d 390 (2015).[2] The ACLU-NJ, which had been granted amicus curiae status before the Appellate Division, filed an amicus brief in support of Gilleran. The Reporters Committee for Freedom of the Press and eighteen media organizations were granted amicus curiae status and filed a brief urging rejection of a “blanket exception” for surveillance videos. We also granted amicus curiae status to the Attorney General of New Jersey, who filed a brief in support of the Township.
II.
The key distinction in the arguments of the parties lies in how to interpret the security exceptions, both of which include the phrase, “if disclosed,” in identifying the type of security information or other material that is excluded from access as a “government record.” The parties further disagree on whether the security exceptions require the review and redaction of discrete material that can be identified as posing a security risk, subject to cost shifting and other accommodations generally provided for through N.J.S.A. 47:lA-5.
Plaintiff and the amici who support her right to request access to the security videotape believe that individualized review and excision is necessary to give meaning to the phrase, “if disclosed,” in the two security exclusions. Plaintiff and amici argue that the phrase requires the Township to review the tapes and excise only those portions of the tape that would create a security risk “if disclosed.”
Plaintiff and amici also suggest that, if the Township is not required to review the tapes, then the Court will have interpreted *169 the exception to be a “blanket exception” for all security measures. They point out that other OPRA exemptions containing similar “if disclosed” language have been applied to require an individualized assessment of the requested government record, with release authorized for those portions that do not pose the demonstrated risk that the exclusion seeks to avoid. Here they emphasize that the Township made no effort to demonstrate that portions of the video “would jeopardize” security because the Township acknowledged that no one had viewed the tape in its entirety.
The Township and the Attorney General view the security exclusions differently. They dispute that the videotape merely provides information equivalent to that which a member of the public would otherwise view standing outside in the surveilled public place. Rather, they maintain that videotape from the Township’s stationary security camera, which is otherwise not available to be seen by the public, would disclose security information that reveals the security system’s operation and vulnerabilities—what the government can view from the inner workings of its security system. They maintain that allowing general public access to their security measures, procedures, and techniques is contrary to the purpose of the security exceptions.
Accordingly, they argue that the revealing information ordered to be released—which would normally be known only to those who could see through the camera’s lenses or, in other words, who can view what the camera’s tapes capture, when, and how well—was intended to be exempt as a category of information under the security exclusions. They emphasize that the security exclusions’ purpose in shielding the release of such sensitive information about a security system is designed to foster protection of public buildings and the people within them. They further argue that courts should apply the security exclusions and deny public access to a security system’s video when the government produces a certification that such information must remain confidential to avoid jeopardizing the security system’s operation.
*170 In further response to plaintiffs and the ACLU-NJ’s position, they contend that their interpretation neither renders the “if disclosed” language meaningless nor creates a blanket exception for security-related information. They maintain that other security-related records remain available on request, subject to excision as needed prior to release. Their position also allows for release, based on a showing of need balanced against the government’s interests, through the common law right of access.
III.
Any analysis of OPRA must begin with the recognition that the Legislature created OPRA intending to make government records “readily accessible” to the state’s citizens “with certain exceptions! ] for the protection of the public interest.” N.J.S.A 47:1A-1 (declaring public policy animating OPRA). OPRA substantively provides that “all government records shall be subject to public access unless exempt,” N.J.S.A. 47:1A-1, and it places on the government the burden of establishing an exemption, N.J.S.A. 47:lA-6. See Mason v. City of Hoboken, 196 N.J. 51, 66-67, 951 A.2d 1017 (2008). The Act sets forth in detail the manner in which requests for inspection, examination, and copying of government records are to be addressed, at times underscoring the responsiveness and cooperation expected from custodians. See N.J.S.A. 47:lA-5.
OPRA expansively defines “Government record” or “record” to include
any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof.
[N.J.S.A 47:1A-1.1J
However, the Legislature established public-policy exceptions from that definition, declaring that “[a] government record shall not include ... information which is deemed to be confidential.” *171 Ibid. Included in the information that the Legislature decreed to be confidential is
emergency or security information or procedures for any buildings or facility which, if disclosed, would jeopardize security of the building or facility or persons therein;
as well as
security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software.

mm

We now evaluate whether those exceptions were intended to exempt from disclosure the security camera videotape that plaintiff requested through OPRA.
IV.
We begin our analysis with the assumption that video footage from a security camera is a “government record” under OPRA because no party has challenged that starting point, and we proceed directly to whether video footage from a public facility’s security surveillance camera is exempt from disclosure based on the public-interest policy concerns underlying the two security-related exemptions. See N.J.S.A. 47:1A-1 (characterizing exceptions as having been created “for the protection of the public interest”).
The two government-record exemptions at issue categorize types of information or content sought to be excluded based on security concerns. One exemption addresses “security information or procedures ... which, if disclosed, would jeopardize security of the building or facility or persons therein.” N.J.S.A. 47:1A-1.1 (emphasis added). The other addresses “security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons [or] property.” Ibid, (emphasis added).
Our task plainly involves statutory construction, the objective of which is to effectuate legislative intent. Cashin v. Bello, 223 N.J. 328, 335, 123 A.3d 1042 (2015). The best source for direction on legislative intent is the very language used by the *172 Legislature. See State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010).
The words used by the Legislature in the applicable exemptions capture categories of information. Their terminology transcends reference to a singular document, or like item, that can be reviewed for redaction and encompasses material that provides insight into security methods and modalities. The first exemption references “security information or procedures” the disclosure of which would jeopardize security of public buildings. N.J.S.A. 47:1A-1.1 (emphasis added). The second speaks even more broadly in precluding disclosure of a category of information, specifically reaching records that reveal “security measures and surveillance techniques” so as not to place at risk the safety of property, which includes public buildings, and people. Ibid, (emphasis added). Our job is to understand the intent that animated those exemptions and to give it effect. Cashin, supra, 223 N.J. at 335, 123 A.3d 1042. We do so fully aware that the Legislature also stated that “any limitations on the right of access ... shall be construed in favor of the public’s right of access.” N.J.S.A. 47:1A-1. In attempting to understand what the Legislature intended, a court does not “view the statutory words in isolation but ‘in context with related provisions so as to give sense to the legislation as a whole.’” Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592, 46 A3d 1262 (2012) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)).
Viewed together, both security exemptions advance a discernible public policy with respect to the security systems of public buildings, such as we have here. The two exemptions endeavor to keep from public scrutiny a swath of information that, if disclosed, would jeopardize or would undermine the effectiveness of the security system for public buildings (property) and the people within them. We seek meaning and intent of the two exemptions by viewing them in context with each other. Murray, supra, 210 N.J. at 592, 46 A.3d 1262.
*173 We begin by agreeing with plaintiff that the Legislature was not creating a blanket exception for any and all information about security measures. Such a clear and direct exclusion could have been written, but that is not how the exemptions are fairly read. The “if disclosed” phrase must have meaning. See State v. Regis, 208 N.J. 439, 449, 32 A3d 1109 (2011) (stating that legislative words are not presumed superfluous). Certainly, there are types of security-related information that would appear disclosable without violating the Legislature’s overarching concern about the maintenance of public security and safety. Examples could include public-bidding documents in connection with acquisition of a security system and documents revealing the cost of the system. Such examples were readily acknowledged during argument in this matter. Thus, the exception does not create a “blanket exception” for all seeurity-system-related material, as feared by plaintiff and amici.
However, the Legislature plainly was concerned about public-safety consequences when creating a shield in OPRA from the on-demand public disclosure of information that relates to public-facility security concerns.
Even if neither security exception is meant to operate as a blanket exception, the Legislature’s exceptions—written without knowing the extent of the public safety challenges that the future might bring—were phrased in a way that allows flexibility in application for security purposes. They maintain the confidentiality of information categories when disclosure of the information, considering the totality of its worth, would compromise the integrity of a security system and defeat the purpose to having security exceptions in OPRA.
The first exception allows for the maintenance of secrecy when the consequence of releasing information produced by certain security tools places at risk the very security system established for the protection of public buildings and people. The second reinforces the legislative desire to preclude disclosure of security measures and surveillance techniques that would create a *174 risk for property and persons. The language of those exceptions broadly permits a categorical exception if the information’s disclosure would create the very danger the security measures and surveillance techniques were meant to thwart.
Current events since the new millennium make evident the present day difficulties of maintaining daily security for public buildings and people using them. The security exceptions prevent OPRA requests from interfering with such security efforts. Even if the Legislature could not have predicted precisely all the many types of criminal, terroristic events that have happened since OPRA was enacted, the Legislature created flexible exceptions to preserve public safety and security. Now, we know that knowledge of the vulnerabilities of a security system could allow an ill-motivated person to know when and where to plant an explosive device, mount an attack, or learn the movements of persons, placing a public building or persons at risk. Information that reveals the capabilities and vulnerabilities of surveillance cameras that are part of a public facility’s security system is precisely the type of information that the exceptions meant to keep confidential in furtherance of public safety.
To achieve exemption for such a category of security information, the governmental entity must establish that the security tool (here, the camera) produces information that, if disclosed, would create a risk to the security of the building or the persons therein because of the revealing nature of the product of that tool. We have recognized before the significance of the release of a “government record” when the mining of information from the government record can defeat the very purpose of the OPRA exclusion. In Education Law Center v. New Jersey Department of Education, 198 N.J. 274, 966 A.2d 1054 (2009), this Court considered the impact that release of a document under OPRA would have on thwarting the purpose of an exclusion recognized under the Act. Specifically, we considered whether the release of a record that contained factual components could be subject to the deliberative-process privilege recognized and protected under *175 OPRA. Id. at 299, 966 A. 2d 1054. In concluding that disclosure of a seemingly fact-based document could reveal deliberative content because that protectable type of information could be gleaned from thoughtful and contextual review of the document, id. at 299-300, 966 A 2d 1054, we held that the purpose to be served by the exception had to be honored in the case before the Court, id. at 300-02, 966 A.2d 1054. The Court took a practical approach to preserving the purpose intended to be achieved by the legislative creation of the exemption.
Here, we cannot allow ourselves to be blind to the very purpose of the security exceptions in issue. When determining whether OPRA meant to require the wholesale release of such security videotape, on demand, we must consider the videotape as a whole, with due regard for the information it can reveal about the Township’s security system. If the release of the product of a security system can lead to the undermining of the legislative public-interest policy embedded in the security exclusions, the exemption protecting such information to avoid the risk of jeopardizing the security protection surely was intended to prevail in order to protect public safety.[3]
In this matter, the scope of the camera’s surveillance area (the width, depth, and clarity of the images, as well as when it operates, i.e. intermittently and, if so, at what intervals and are they regular) is the information that the Township seeks to protect. That the video may contain depictions of otherwise non-confidential views of an area outside a public building or may capture persons moving in a public area is not a complete way in *176 which to assess the security worth of this requested government record. Such analysis provides a stunted review for addressing the purpose underlying the security exemptions.
No doubt the security exceptions recognize the need, in some instances, to deny access to only a portion of a government record in order to avoid placing at risk the safety of a person identifiable on the videotape.[4] But when the public-security concern is that access to the videotape product of the surveillance medium itself reveals security-compromising information, then the exemptions can be relied on to bar, categorically, under OPRA, a security system’s otherwise confidential surveillance product.
A sensible application of the security exceptions supports denying release of information that undermines the operation of a government facility’s security system. Compelling the wholesale release to the public of videotape product of any security camera, or combination of cameras, from a government facility’s security system would reveal information about a system’s operation and also its vulnerabilities. Once OPRA is interpreted to require unfettered access to the work product of any camera that is part of a governmental facility’s security system, then footage from security cameras in all governmental facilities—police stations, court houses, correctional institutions—would be subject to release on demand. It takes no stretch of the imagination to realize that that would make it possible for any person to gather the information necessary to dismantle the protection provided by such security systems.
Requests for videotape product from surveillance cameras protecting public facilities are better analyzed under the common *177 law right of access where the asserted need for access can be weighed against the needs of governmental confidentiality. See O’Boyle v. Borough of Longport, 218 N.J. 168, 196-97, 94 A.3d 299 (2014) (noting that “the party requesting documents must explain why he seeks access to the requested documents” and relating three-part test used for evaluation of such requests); Educ. Law Ctr., supra, 198 N.J. at 302, 966 A.2d 1054. We can envision circumstances when the need for access to a portion of a videotape, redacted as necessary, may justify release of the requested material. For example, an accident occurring in an area surveilled near a public building or an incident of claimed brutality or misconduct captured on a facility’s security videotape may provide a legitimate interest to justify a partial disclosure under the common law right of access.[5] Plaintiffs common law right of access claim was never reached in this matter and so that balancing-of-interest analysis was not performed. That is the context in which the give and take emphasized by the dissent should take place when security videotape, capable of revealing vulnerabilities of the security system itself, is requested.
That said, we conclude that the broad brush of compelled release under OPRA, on demand for any or no reason, of the Township’s security system’s surveillance videotape product, revealing its capabilities and vulnerabilities, is contrary to the legislative intent motivating OPRA’s exemptions based on security concerns. We hold that the videotape requested in this matter is not subject to public access under OPRA’s security exclusions. Although a more expansive explanation by the Township would have been preferable, we are satisfied that the Township provided an adequate basis, through Mr. Ehrenberg’s certification, as buttressed by argument, to support its position that allowing general *178 public access under OPRA to the video footage from the surveillance camera on Town Hall and the adjacent police station would undermine the security purpose of the camera and of the security system of which it is but a part.
V.
The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings based on the unresolved common law right-of-access claim.
JUSTICES ALBIN, FERNANDEZ-VINA, AND SOLOMON join in JUSTICE LaVECCHIA’s opinion. CHIEF JUSTICE RABNER filed a separate, dissenting opinion in which JUSTICE TIMPONE joins. JUSTICE PATTERSON did not participate.

 In different places in the record, this person is listed as a "clerk/typist," a records custodian, or an employee in the Municipal Clerk’s office who frequently responds to OPRA requests.

 A related notice of petition for certification was dismissed.

 On this point, the dissent describes the majority opinion as not giving effect to the second prong of analysis under the exceptions, namely that the disclosure would jeopardize security or would create a risk to safety. See infra at 167, 149 A.3d at 805. That mistakes our analysis. Although under our interpretation of the statutory exemption no security footage can pass the second part of the test embedded in the exception, that is not to say that all security information is exempt because, as noted, security information includes more than just security video footage. The statutory language from the second prong to the exceptions is not omitted in our analysis.

 When that is the only basis asserted for non-disclosure of an otherwise disclosable government record, then it would be appropriate for the governmental entity to review the tapes and redact or excise certain portions. OPRA allows for cost shifting for the additional burden on public resources should that form of search expedition be requested in an appropriately tailored way. See NJ.S.A. 47:lA-5.

 This Court also recognized recently the possibility of a judicially fashioned remedy that could include the required release of a portion of security videotape from cameras inside and outside a police building as part of required discovery in a DWI prosecution. See State v. Stein, 225 N.J. 582, 600-01, 139 A.3d 1174 (2016).