SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**David Goyco v. Progressive Insurance Company** (A-12-23) (088497)

**Argued January 29, 2024 -- Decided May 14, 2024**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the operator of a low-speed electric scooter (LSES) is a "pedestrian" entitled to personal injury protection (PIP) benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, commonly known as the No-Fault Act.

In November 2021, an automobile struck and injured plaintiff David Goyco while he was operating an LSES that has two wheels connected by a floorboard, as well as handlebars, a headlight, brake light, speedometer, and electric motor. Goyco made a claim for PIP benefits under his personal automobile policy with defendant Progressive Insurance Company. Progressive denied Goyco's claim. It concluded that coverage was not required under Goyco's policy, which tracks N.J.S.A. 39:6A-4, because the LSES Goyco operated at the time of the accident did not meet the definition of an "automobile," and Goyco could not be considered a "pedestrian."

Goyco filed a verified complaint, asserting that LSES riders should be deemed "pedestrians" entitled to PIP benefits under the No-Fault Act in light of the 2019 enactment of N.J.S.A. 39:4-14.16(g), which provides that an LSES should be considered equivalent to a bicycle -- with bicyclists having been deemed pedestrians under the No-Fault Act -- except in statutory provisions that clearly do not apply to an LSES. The trial court denied relief to Goyco, and the Appellate Division affirmed. The Court granted Goyco's petition for certification. 255 N.J. 429 (2023).

**HELD:** An LSES rider does not fall within the definition of "pedestrian" for purposes of the No-Fault Act. Goyco is not entitled to PIP benefits.

1. With the goals of providing prompt payment of medical expenses arising from an automobile accident, regardless of fault, and containing the rising cost of automobile insurance premiums, the No-Fault Act requires in part that every New Jersey automobile liability insurance policy provide PIP benefits (1) when the covered individual is "occupying, entering into, alighting from or using an automobile"; or (2) when the covered individual is a pedestrian. N.J.S.A. 39:6A-4. "For the

1

purposes of [the No-Fault Act]," a "pedestrian" is defined as "any person who is not occupying, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h). (pp. 8-11)

2. "Vehicle" is not defined in the No-Fault Act. Plaintiff suggests that the Court should therefore apply the definition from N.J.S.A. 39:1-1, which would exclude an LSES. That is not appropriate for several reasons. First, N.J.S.A. 39:1-1 is prefaced by a limiting introductory clause stating that the definitions listed refer to terms "[a]s used in this subtitle." Because the No-Fault Act is contained in different subtitle, the definitions in N.J.S.A. 39:1-1 do not apply to it. The sole exception within the No-Fault Act -- N.J.S.A. 39:6A-2(j), which expressly incorporates a definition from N.J.S.A. 39:1-1 -- proves the rule that a similar reference should not simply be inferred elsewhere, which would render the reference in (j) meaningless. And the Legislature has instructed that statutes should be interpreted by giving each word its "generally accepted meaning" unless a "different meaning is expressly indicated," see N.J.S.A. 1:1-1, which corresponds with traditional principles of statutory construction. The Court therefore reviews definitions of "vehicle" and concludes that an LSES fits within the ordinary meaning of the term. (pp. 11-16)

3. Further, at the time of the accident, Goyco's LSES was "propelled by other than muscular power" because it used an electric motor with a rechargeable battery and was not designed to be propelled by muscular power. And plaintiff's LSES was "designed primarily for use on highways" based on its features and the broad ordinary definition of that term. In sum, plaintiff was occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, and he was therefore not a "pedestrian" for purposes of the No-Fault Act. (pp. 16-19)

4. The Court rejects Goyco's reliance on N.J.S.A. 39:4-14.16(g). First, it is unclear whether that 2019 statute, codified in Subtitle 1 of Title 39, was intended to have any effect on statutes in Subtitle 2. Second, the conclusion that bicyclists are pedestrians under the No-Fault Act is rooted in N.J.S.A. 39:6A-2(h)'s definition of "pedestrian," which "by [its] nature may have no application to low-speed electric bicycles or low-speed electric scooters." N.J.S.A. 39:4-14.16(g). Expanding the definition of "pedestrian" to include LSES operators would be a policy decision with insurance cost implications that is properly for the Legislature, not the Court. (pp. 19-23)

     **AFFIRMED as modified.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE SOLOMON's opinion.**

# SUPREME COURT OF NEW JERSEY
## A-12 September Term 2023
### 088497

David Goyco,

Plaintiff-Appellant,

v.

Progressive Insurance Company,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| January 29, 2024 | May 14, 2024 |

Christian C. LoPiano argued the cause for appellant (LoPiano Law Firm, attorneys; Christian C. LoPiano, of counsel and on the briefs).

Patricia A. Holden argued the cause for respondent (Cipriani & Werner, attorneys; Patricia A. Holden and Robert A. Maren (Vella & Maren), on the briefs).

David J. Karbasian argued the cause for amicus curiae New Jersey Association for Justice (Law Offices of David J. Karbasian, attorneys; David J. Karbasian and Jason S. Walker, on the brief).

Nicole R. Cassata argued the cause for amicus curiae New Jersey Defense Association (Chasan Lamparello Mallon & Cappuzzo, attorneys; Nicole R. Cassata, on the brief).

1

Mark M. Tallmadge submitted a brief on behalf of amicus curiae New Jersey Property-Liability Insurance Guaranty Association (Bressler, Amery & Ross, attorneys; Mark M. Tallmadge and Siena Carnevale, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In this case, we are called upon to decide whether the operator of a low-speed electric scooter (LSES) is entitled to personal injury protection (PIP) benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, commonly known as the No-Fault Act.

The No-Fault Act requires insurance companies to provide PIP benefits to insured individuals in two circumstances: (1) when the covered individual is "occupying, entering into, alighting from or using an automobile"; or (2) when the covered individual is a pedestrian. N.J.S.A. 39:6A-4. The No-Fault Act defines "pedestrian" as "any person who is not occupying, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h).

The parties do not dispute that plaintiff David Goyco's insurance policy with defendant Progressive Insurance Company (Progressive) must comply with those mandatory statutory provisions. What the parties contest is whether plaintiff was a "pedestrian" within the meaning of the No-Fault Act and, by

2

extension, the policy. Plaintiff argues that LSES riders should be deemed "pedestrians" entitled to PIP benefits under the No-Fault Act in light of the 2019 enactment of N.J.S.A. 39:4-14.16(g), which provides that an LSES should be considered equivalent to a bicycle except in statutory provisions that clearly do not apply to an LSES.

For the reasons that follow, we hold that an LSES rider does not fall within the definition of "pedestrian" for purposes of the No-Fault Act because the LSES is "a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h). Therefore, Goyco is not entitled to PIP benefits, and we affirm as modified the judgment of the Appellate Division.

I.

On November 22, 2021, an automobile struck and injured Goyco while he was operating a "Segway Ninebot KickScooter Max" in Elizabeth, New Jersey. The "Segway Ninebot KickScooter Max" is an LSES that has two wheels connected by a floorboard, as well as handlebars, a headlight, brake light, and speedometer. Pursuant to its owner's manual, the LSES is designed to be operated using its rechargeable battery, which powers its electric motor.

Goyco sustained injuries from the accident and incurred medical expenses. At the time of the accident, Goyco was the named insured under a

3

personal automobile policy with Progressive. Goyco reported the accident and made a claim for PIP benefits under the policy, which provided -- in terms that track N.J.S.A. 39:6A-4 -- that the insured could receive PIP benefits for injuries sustained in an accident "1. while occupying, entering into, alighting from, getting on, getting off of, loading, unloading, or using an automobile; or 2. as a pedestrian, caused by an automobile or by an object propelled by or from an automobile." The policy defines "automobile" in terms that track N.J.S.A. 39:6A-2(a), and it defines "pedestrian" as "any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." (emphasis added). That language similarly tracks the No-Fault Act. See N.J.S.A. 39:6A-2(h). The policy does not define "vehicle."

Progressive denied Goyco's claim for PIP benefits. Progressive concluded that the LSES Goyco operated at the time of the accident did not meet the definition of an "automobile," and Goyco could not be considered a "pedestrian" because he was "driving" the LSES at the time of the accident.

Goyco filed a verified complaint and an order to show cause, asking the trial court to direct Progressive to pay all reasonable medical expenses incurred to treat his injuries. At oral argument, Goyco asserted that an LSES is akin to a bicycle pursuant to N.J.S.A. 39:4-14.16(g) and that, under New

4

Jersey case law, bicycle riders are considered "pedestrians" within the meaning of the No-Fault Act. Goyco argued that an LSES is akin to a bicycle, and therefore he was a "pedestrian" for purposes of PIP benefits. In opposition, Progressive argued that an LSES is not an "automobile" under the No-Fault Act and Goyco does not qualify as a "pedestrian" because the LSES is motorized.

The trial court determined that an LSES is not an automobile under the statute or the policy. In addition, the court concluded that Goyco could not rely on N.J.S.A. 39:4-14.16(g) to support the contention that an LSES is like a bicycle for purposes of PIP benefits because that provision is not part of the No-Fault Act. The trial court noted further that the No-Fault Act contains no mention of "bicycles," and any reference to bicycles in N.J.S.A. 39:4-14.16(g) or any other provisions of Chapter 4 has no impact on Chapter 6A, which houses the No-Fault Act. Finally, the trial court determined that "[t]he plain language and nature of the definition of a 'pedestrian' in accordance with [the No-Fault Act] clearly has no application to an [LSES]." The trial court thus denied relief to Goyco.

Goyco appealed, and the Appellate Division affirmed the trial court's judgment. First, the Appellate Division found that Goyco was not a "pedestrian" within the plain language of the No-Fault Act because an LSES is

5

a "vehicle propelled by other than muscular power" that meets the definition of a "[l]ow-speed electric scooter" in N.J.S.A. 39:1-1. The Appellate Division also rejected the argument that N.J.S.A. 39:4-14.16(g) likens an LSES operator to a bicyclist. Relying on the text of N.J.S.A. 39:4-14.16(g), the Appellate Division found that the statute's exception overcame Goyco's argument: "all statutes . . . rules, and regulations applicable to bicycles . . . shall apply to [an LSES] except those provisions which by their very nature may have no application to . . . [an LSES]." (emphasis added).

We granted Goyco's petition for certification, 255 N.J. 429 (2023), as well as the motions of the New Jersey Association for Justice (NJAJ), the New Jersey Defense Association (NJDA), and the New Jersey Property-Liability Insurance Guaranty Association (NJPLIGA) to appear as amici curiae.

II.

A.

Goyco urges this Court to apply N.J.S.A. 39:4-14.16(g) and interpret "pedestrian" to include an LSES operator, just as it includes bicyclists. Goyco first argues that N.J.S.A. 39:4-14.16(g) supports the assertion that an LSES is akin to a bicycle because it provides, in part, that "all statutes . . . rules and regulations applicable to bicycles . . . shall apply to [an LSES]." Second, Goyco contends that the Appellate Division misapplied the exception in

6

N.J.S.A. 39:4-14.16(g), which excludes "those provisions which by their very nature may have no application to . . . [an LSES]."

Amicus curiae NJAJ agrees with Goyco that N.J.S.A. 39:4-14.16(g) should apply here. In addition, NJAJ argues that the No-Fault Act's definition of "pedestrian" requires that the LSES be "propelled by other than muscular power and designed primarily for use on highways, rails, and tracks." (emphasis added) (quoting N.J.S.A. 39:6A-2(h)). Arguing that an LSES does not meet the second part of that definition, NJAJ argues that an LSES operator falls within the definition of "pedestrian" and is entitled to PIP benefits.

B.

Progressive claims that N.J.S.A. 39:4-14.16(g) does not apply here because it explicitly excludes "those provisions which by their very nature may have no application to . . . [an LSES]" and that the definition of "pedestrian" in the No-Fault Act, N.J.S.A. 39:6A-2(h), is such a provision. Turning to extrinsic evidence, Progressive claims that N.J.S.A. 39:4-14.16 is inapplicable to the No-Fault Act because it was implemented to combat climate change -- not to expand the applicability of PIP benefits in the No-Fault Act.

Amici NJDA and NJPLIGA agree with and largely reiterate Progressive's arguments, asserting that the trial court and the Appellate

7

Division's application of N.J.S.A. 39:6A-2(h) to bar Goyco's claim for PIP benefits was consistent with the terms of the statute and the Legislature's intent. In addition, NJDA and NJPLIGA express concern that expanding N.J.S.A. 39:6A-2(h) to include LSES operators will increase the cost of automobile insurance premiums, which would ultimately defeat the Legislature's intent in passing the No-Fault Act.

Amicus curiae NJPLIGA notes that the exception in N.J.S.A. 39:4-14.16(g) precludes application to statutory provisions like N.J.S.A. 39:6A-2(h), because N.J.S.A. 39:4-14.16(g) has no relevance to an LSES, as evidenced by the fact that the No-Fault Act makes no reference to "bicycles." In addition, NJPLIGA argues that it is outside this Court's authority to utilize a provision from another chapter to expand the definition of "pedestrian" in the No-Fault Act to include an LSES.

## III.

Enacted in 1972, see L. 1972, c. 70, the No-Fault Act had two primary goals: (1) "to provide prompt payment of medical expenses arising from an automobile accident, regardless of fault," and (2) "to contain the rising cost of automobile insurance premiums," Cooper Hosp. Univ. Med. Ctr. v. Selective Ins. Co. of Am., 249 N.J. 174, 179 (2021).

8

To further these goals, the No-Fault Act requires in part that "every owner or registered owner of an automobile registered or principally garaged in" New Jersey "maintain automobile liability insurance coverage." N.J.S.A. 39:6A-3. And, of particular relevance here, the Act directs that

> every standard automobile liability insurance policy . . . shall contain [PIP] benefits for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, and to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured.
>
> [N.J.S.A. 39:6A-4.]

"Under No-Fault, automobile insurers are required to provide PIP coverage to their insureds, without consideration of fault, and are prohibited from asserting subrogation claims seeking reimbursement of medical expenses against the at-fault insured's PIP provider." Palisades Ins. Co. v. Horizon Blue Cross Blue Shield of N.J., 469 N.J. Super. 30, 38 (App. Div. 2021).

In this appeal, we review the contours of N.J.S.A. 39:6A-4 to determine whether plaintiff falls under that provision as a "pedestrian" within the meaning of the statute. Our review is de novo and owes "no deference to the

9

legal conclusions reached by the trial court and Appellate Division." W.S. v. Hildreth, 252 N.J. 506, 518 (2023). In construing the statute, we aim to effectuate the Legislature's intent, which is often best indicated through the statute's language. Gilleran v. Township of Bloomfield, 227 N.J. 159, 171 (2016). This Court "ascribe[s] to the statutory words their ordinary meaning and significance and read[s] them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). "When the plain language of a statute is clear and unambiguous, we apply the law as written." W.S., 252 N.J. at 518. If the statutory language is ambiguous, however, we may use extrinsic evidence to aid our inquiry. DiProspero, 183 N.J. at 492-93.

A.

N.J.S.A. 39:6A-2 is the definitional section of the No-Fault Act. The list of definitions provided in its subsections -- (a) through (o) -- are preceded by the introductory phrase, "[a]s used in this act," which is followed by a colon. Ibid. "[I]n this act" plainly refers to the No-Fault Act. See DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 185 (2024) (underscoring that phrases like "[f]or the purposes of this act" have been used in the context of consumer fraud legislation to refer to the specific legislative enactment to which the phrase belongs).

10

Thus, "[f]or the purposes of [the No-Fault Act]," a "pedestrian" is defined as "any person who is not occupying, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h). Here, it is undisputed that plaintiff was "occupying" his LSES at the time of the accident. To determine whether he was nonetheless a "pedestrian" within the meaning of the statute, we must therefore determine (1) whether the LSES is a vehicle; (2) whether it is "propelled by other than muscular power"; and (3) whether it is "designed primarily for use on highways, rails and tracks."

1.

"Vehicle" is not defined in the No-Fault Act. Plaintiff suggests that we should therefore look to the definition of "vehicle" in N.J.S.A. 39:1-1 -- "every device in, upon which, or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks or low-speed electric bicycles, low-speed electric scooters, or motorized bicycles" -- and apply that definition within the No-Fault Act. That is not appropriate for several reasons.

First, just as N.J.S.A. 39:6A-2 has an introductory clause limiting the application of its definitions, N.J.S.A. 39:1-1 is prefaced by its own limiting introductory clause, which states that the definitions listed refer to terms "[a]s

11

used <u>in this subtitle</u>." (emphasis added). Given that N.J.S.A. 39:1-1 is contained within Subtitle 1 of Title 39, it follows that its definitions apply to the entirety of Subtitle 1 only -- which includes Chapters 1 through 5H of New Jersey's Motor Vehicle and Traffic Laws. N.J.S.A. 39:1-1 to -5H. Because the No-Fault Act is contained in <u>Subtitle 2</u>, Chapter 6A, the definitions in N.J.S.A. 39:1-1 do not apply to the Act.

Indeed, certain terms are defined differently in the No-Fault Act than they are in Chapter 1. "Pedestrian" itself is an example: in contrast to its multi-part definition in the No-Fault Act, the term is defined simply as "a person afoot" in N.J.S.A. 39:1-1. Similarly, the lengthy definition of "automobile" provided in N.J.S.A. 29:6A-2(a)[1] is distinct from the meaning of "all motor vehicles except motorcycles" found in N.J.S.A. 39:1-1.

---

[1] Under the No-Fault Act,

> "Automobile" means a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching. An automobile owned by a farm family copartnership or corporation, which is

12

Such statutory differences and distinct definitions are not surprising in light of the structure of Title 39 and the disparate types of laws it contains. Subtitle 1, labeled "Motor Vehicles Generally; Traffic Laws," establishes the rules of the road and provides for their enforcement, whereas Subtitle 2, "Additional Motor Vehicle Regulations," establishes rules for processes such as financing, owning, maintaining, and insuring motor vehicles. We do not suggest that all chapters within the two subtitles follow the same definitions; rather, we highlight the diverse subjects of regulation covered within Title 39 to illustrate why -- in addition to the limiting language of the definitional sections themselves -- a definition from one chapter cannot simply be imported into another chapter of Title 39.

The sole exception within the No-Fault Act proves that rule. In N.J.S.A. 39:6A-2(j), the Legislature expressly provided that, for purposes of the No-Fault Act, "'[m]otor vehicle' means a motor vehicle <u>as defined in [N.J.S.A.] 39:1-1</u>, exclusive of an automobile as defined in subsection a. of this section." (emphasis added). The fact that subsection (j) explicitly references N.J.S.A.

---

principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger automobile owned by two or more relatives resident in the same household.

[N.J.S.A. 39:6A-2(a).]

39:1-1 strongly supports that a similar reference should not simply be inferred elsewhere, which would render the reference in (j) meaningless. See Burgos v. State, 222 N.J. 175, 203 (2015) ("We do not support interpretations that render statutory language as surplusage or meaningless . . . ."). And the fact that N.J.S.A. 39:6A-2(j) exempts from the referenced definition of "motor vehicle" "an automobile as defined in subsection a. of this section" (emphasis added) -- as opposed to an automobile as defined in N.J.S.A. 39:1-1 -- reinforces the exceptional nature of the incorporation of the definition of "motor vehicle" from that statute into the No-Fault Act.

Another reason not to look to a statute beyond the No-Fault Act to define "vehicle" for purposes of the Act is that the Legislature has instructed us to interpret a statute by giving each word its "generally accepted meaning" unless a "different meaning is expressly indicated":

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
>
> [N.J.S.A. 1:1-1 (emphasis added).]

14

Those instructions correspond with traditional principles of statutory construction.  See DiProspero, 183 N.J. at 492.

Here, we find -- in light of the limiting language of the definitional statutes and the express reference to N.J.S.A. 39:1-1 within a single definition from the No-Fault Act -- that it is neither inconsistent with legislative intent nor contrary to any express indication of meaning to look to and apply the ordinary meaning of "vehicle" in interpreting the term as used in N.J.S.A. 39:6A-2(h).

"Vehicle" has been variously defined as "[a]n instrument of transportation or conveyance," Black's Law Dictionary 1868 (11th ed. 2019); "a thing used for transporting people or goods, esp. on land, such as a car, truck, or cart," New Oxford American Dictionary 1864 (2d ed. 2005); "any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport" or "a conveyance moving on wheels, runners, tracks, or the like, as a cart, sled,  automobile, tractor, etc.," Random House Dictionary of the English Language (Unabridged) 1583 (1965); and "a means of carrying or transporting something,"[2] Websters New International Dictionary 2538 (3d ed. 1981).

_____

[2] "Vehicle" is still defined as "a means of carrying or transporting something." Merriam-Webster 1386 (11th ed. 2020).

An LSES clearly falls within those ordinary definitions of the term, and we conclude that it is therefore a "vehicle" for purposes of the No-Fault Act.

## 2.

Next, we consider whether plaintiff's LSES is "propelled by other than muscular power."

The Appellate Division has recognized, and we agree, that "[t]he purpose and character of [a] vehicle are determinative of whether one is to be covered for PIP benefits as a pedestrian." Nunag v. Pa. Nat. Mut. Cas. Ins. Co., 224 N.J. Super. 753, 757 (App. Div. 1988). In Nunag, the Appellate Division considered an issue like the one presented here: whether an insurance company was required to pay PIP benefits to an insured who suffered injuries when her moped was struck by an automobile. Id. at 754-55. The plaintiff, a member of the insured's household, argued -- like Goyco -- that she was a pedestrian while riding her moped. Id. at 755. The court noted that not "all mopeds are always . . . vehicles 'propelled by other than muscular power'" as "certain mopeds have dual capacity and can be propelled in a completely muscular power mode by disengaging the engine." Id. at 757-58. Still, the court found that the plaintiff's moped "was clearly being used as one propelled by other than muscular power" because "[i]t was [the] plaintiff's clear

16

intention to continue under motor power, rather than to utilize the machine as a bicycle and to travel under muscular power." Ibid.

Based on the evidence presented here, we find that, at the time of the accident, Goyco's LSES was "propelled by other than muscular power" because it used an electric motor with a rechargeable battery. Critically, Goyco's LSES was not designed to be propelled by muscular power. Our inquiry, however, does not end with that conclusion.

3.

We next turn to the final requirement in the definition and consider whether an LSES is "designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h). Amicus curiae NJAJ contends that an LSES is not "designed primarily for use on highways, rails and tracks," meaning Goyco is a "pedestrian" for purposes of obtaining PIP coverage.

In Lane v. Prudential Property & Casualty Insurance Co., the Appellate Division considered whether a child riding a motor bike was entitled to PIP benefits. 196 N.J. Super. 504, 505-06 (App. Div. 1984). The motor bike had no speedometer; its handbrake had been disconnected; and it "bore no license plate, headlights, taillight or turn signals." Id. at 506. Nevertheless, the court found that the child was not a pedestrian because "the vehicle was capable of traveling 30 to 40 miles per hour and could not be propelled other than by a

17

motor." Id. at 510. The fact that the motor bike "did not have a license plate, headlights, taillight or turn signals and that its handbrake had been disconnected [did] not mitigate against the trial judge's finding that it was 'designed primarily for use on highways.'" Ibid.

Applying the ordinary definition of "highway" as we did for "vehicle," see N.J.S.A. 1:1-1; DiProspero, 183 N.J. at 492, we find that plaintiff's LSES was likewise "designed primarily for use on highways," see Lane, 196 N.J. Super. at 510.

"Highway" has been variously defined as "[b]roadly, any main route on land, on water, or in the air," or "[a] free and public roadway or street that every person may use," Black's Law Dictionary at 876; "a main road, esp. one connecting major towns or cities," or "(chiefly in official use) a public road," Oxford New American at 798; "a main road, esp. one between towns or cities," or "any public passage, either a road or waterway," or "any main or ordinary route, track or course," Random House at 671; "a road or way on land or water that is open to public use as a matter of right whether or not a thoroughfare: a public road or way (as a footpath, road, or waterway)," Webster's at 1069.

Goyco's LSES can travel 15.5 miles per hour and has a headlight, brake light, and speedometer -- several features that the motor bike in Lane did not have. The LSES's owner's manual provides that LSES operators must

18

"[c]omply with local laws and regulations when riding th[e] product." An LSES is "designed primarily for use on highways" within the broad ordinary meaning of that term and, thus, within the meaning of N.J.S.A. 39:6A-2(h).

Once again, the No-Fault Act mandates PIP coverage for a "pedestrian," that is, "any person who is not occupying, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks." N.J.S.A. 39:6A-2(h), -4 (emphases added). Upon close review of those requirements, we have concluded that plaintiff was a person who was occupying a vehicle propelled by other than muscular power and designed primarily for use on highways. We therefore find that plaintiff is not a "pedestrian" for purposes of the No-Fault Act.

B.

Plaintiff argues that a statute enacted in 2019 reveals legislative intent that LSES riders be considered "pedestrians" under the much earlier No-Fault Act. N.J.S.A. 39:4-14.16 governs the "[o]peration of low-speed electric bicycle[s] or scooter[s]." The statute specifies that LSES "may be operated on the streets, highways, roadways, and bicycle paths of this State," subject to certain exceptions, "and may be parked on a sidewalk." Id. at (a). And the statute states that,

> [e]xcept as otherwise provided by this section, all
> statutes, including the provisions of chapter 4 of Title

19

> 39 of the Revised Statutes, rules, and regulations applicable to bicycles, as defined in [N.J.S.A. 39:4-10.1], shall apply to low-speed electric bicycles and low-speed electric scooters, except those provisions which by their very nature may have no application to low-speed electric bicycles or low-speed electric scooters.
>
> [Id. at (g).]

Relying on subsection (g), plaintiff argues that, because the regulations applicable to a bicycle also apply to an LSES, and because we have held that a bicyclist is a pedestrian for purposes of the No-Fault Act, see Darel v. Pa. Mfrs. Asso. Ins. Co., 114 N.J. 416, 419 (1989) ("Plaintiff, as operator of a bicycle, was within the definition of a 'pedestrian' in N.J.S.A. 39:6A-2(h) . . . ."), an LSES rider must also be a pedestrian for purposes of the No-Fault Act. That syllogism, however, is not persuasive.

First, it is unclear whether the 2019 statute -- governing the operation of vehicles in keeping with Chapter 4 and Subtitle 1 of Title 39 -- was intended to have any effect on statutes in Subtitle 2, pertaining to ownership concerns such as insurance. Even putting aside the topical disparity between N.J.S.A. 39:4-14.16(g) and the No-Fault Act, however, we find that the 2019 statute does not call for LSES riders to be deemed "pedestrians" for purposes of the Act.

The conclusion that bicyclists are pedestrians under the No-Fault Act is rooted in N.J.S.A. 39:6A-2(h)'s definition of "pedestrian": unlike an LSES, a

20

bicycle is <u>not</u> "propelled by other than muscular power." See <u>Nunag</u>, 224 N.J. Super. at 757 (finding that the plaintiff, who was riding a motorized bicycle, was not a "pedestrian" within the meaning of the No-Fault Act because "[i]t was plaintiff's clear intention to continue under motor power, rather than to utilize the machine as a bicycle and to travel under muscular power"). Because an LSES <u>is</u> "propelled by other than muscular power" and is also a "vehicle" "designed primarily for use on highways," the definition of "pedestrian" "by [its] very nature may have no application to low-speed electric bicycles or low-speed electric scooters." <u>See</u> N.J.S.A. 39:4-14.16(g).

Plaintiff's policy arguments are similarly unavailing in light of the clear statutory text. Plaintiff asserts that the No-Fault Act was "enacted as social legislation in 1972 to be liberally construed to provide the public with personal injury protection coverage as a social necessity which should be given the broadest application consistent with the statutory language." Although the goal of assuring medical coverage is a key aim of the Act, it is balanced against the Act's other main goal of "contain[ing] the rising cost of automobile insurance premiums." <u>See</u> <u>Cooper Hosp.</u>, 249 N.J. at 179. Expanding the definition of "pedestrian" to include LSES operators would advance the medical coverage goal but undermine the goal of curbing the rise of insurance costs. <u>See</u> <u>ibid.</u> The Legislature may certainly choose to expand the

21

availability of PIP coverage to LSES operators, as they did with motorcycles, see N.J.S.A. 17:28-1.3, but that policy decision and its insurance cost implications, if any, is properly for the Legislature, not the Court.

In short, we agree with the Appellate Division's conclusion that Goyco is not entitled to PIP benefits because he is not a pedestrian pursuant to N.J.S.A. 39:6A-2(h). Rather than look to the definition of a "[l]ow-speed electric scooter" in N.J.S.A. 39:1-1, however, we rely on the plain language of the No-Fault Act and the ordinary meanings of the undefined terms it uses; we also find the lack of relationship between Chapters 4 and 6A of Title 39 is relevant to show that N.J.S.A. 39:4-14.16(g) does not render an LSES rider a pedestrian for purposes of the No-Fault Act.

Goyco's LSES is a "vehicle" that uses a rechargeable electric motor and is therefore "propelled by other than muscular power" and is "designed for use on highways, rails and tracks." The plain text and legislative history of N.J.S.A. 39:4-14.16 do not suggest that the Legislature intended LSES riders to be considered pedestrians for purposes of the No-Fault Act. By contrast, the text of the No-Fault Act and its legislative history suggest that LSES riders are not considered "pedestrians" for purposes of PIP benefits. As a result, and because there is no argument that the policy at issue here provides coverage

22

beyond the statutory requirements, Goyco is not a pedestrian entitled to PIP

benefits under Progressive's No-Fault insurance policy.

IV.

The judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE SOLOMON's opinion.